Opinion of the Court, ey
Judge Owsley.
THIS action was brought in the court below, by the Bank of Lexington, against Taylor and Baltzell, upon their endorsement on the following note:
“ On the first day of January 1820, I, Robert Taylor, promise to pay unto Joseph Taylor and' George Balt-zell, thirteen hundred and ninety-one dollars sixty-six cents, negotiable and payable at the Frankfort Bank without defalcation, for value received, Witness my hand this 13th day of October 1818.
Robert L. Taylor.”
The note was endorsed by Joseph Taylor and George Baltzell to F. P. Blair, and after several other eadorse-merits, was finally endorsed to the President, Directors and Company of the Farmers and Mechanics’ Bank of Lexington.
The note was never discounted by ’the Frankfort Bank; but after the first day of March 1819, and before it became payable, it was discounted by the bank of Lexington; and the question propounded for the de-cisión of this court, is, whether or not, in consequence of. the discount by the Lexington bank, the note is. elevated to the grade of foreign bills of exchange, so as to authorise the bank to sue the remote endorsers of the note. •
According to the provisions of the act of January 1818, incorporating the independent banks, (of which the bank of Lexington and that of Frankfort composea part,) it is conceded that the bank of Lexington possessed no power to discount the note of any individual, which was made payable and negotiable at any other bank. The 12th section of that act expressly declares, “ that no note or obligation of any co-partnership, corporation or individual, shall be negotiable at the bank or banks hereby established, unless it be so expressed on the face of said note, except the note or notes of some bank or monied institution authorised by the laws of this commonwealth.”
If, therefore, the question under consideration rested exclusively upon thé act incorporating the banks, we *342 should have no hesitation in deciding against the pro* prjejj oflhe plaintiffs maintaining their action against the defendants, who are remote endorsers. But before the note was discounted by the Lexington bank, the act of February 1819 was enacted; and by the eighth section of that act, it is provided, that “ it shall be lawful for any of the banks incorporated by the laws of this commonwealth, to discount or negotiate any note or bill made negotiable and payable at any other bank in this commonwealth; but the discount of any such note or bill, shall not alter the time or the place of the payment of such note or hill.” According to the plain and unambiguous import of this section, therefore, it necessarily follows, that at the time the note was discounted by the Lexington bank, that corporation possessed competent-power to make the discount; and as by the original act incorporating the banks, all notes at any time-discounted by them, are placed upon the footing of foreign bills of exchange, it also follows that the plaintiffs’ action against the remote endorsers, was correctly conceived. It is true, this latter act under which the Lexington bank derived its authority to discount the note, was enacted after the date of the note. But the note upon its face, is made payable and negotiable a.t the Frankfort bank, and according the act in force at the date of the note, might have been discounted by that bank; and no solid objection is perceived against the power of the legislature to authorise any bank to discount a note, which at its date, might have been discounted by any other bank. After being discounted by the Lexington bank, the rights of all persons concerned, were precisely the same that they would have been, if the note had been discounted by the Frankfort bank, and the remedies are precisely the same also.
The judgment must, therefore, be affirmed with costs..
This opinion was pronounced at the commencement of the term, whereupon Samuel Todd, Esq. presented the following petition for a re-hearing:
The appellants, by their counsel, respectfully solicit the court for a reconsideration of the opinion delivered in this case, and beg the attention of the court to some *343 of thé principles which will now be urged as a reason for changing the opinion as delivered. ..
It is admitted by the opinion of the court, that when this note was made’and assigned by Taylor and Baltzell, no bank but the Frankfort bank could have discounted the note or elevated it to a bill of exchange. Now, this' suit is to subject the endorsers on that assignment; it is that alone, which gives any cause of action against them; what then was the contract with their assignees? How far and on what conditions did they agree to assign the note, and on what conditions,,did the assignees agree to accept? I contend, it was plainly this, that in case the assignees procured a discount thereof, in the Frankfort bank, then they would be bound by it as endorsers of a bill of exchange; if they did not procure a discount at the Frankfort bank, then they were only bound in case a suit was prosecuted with due diligence against R. Taylor, and he failed. Now, this I repeat, was the contract fully known and understood by both parties at the time the assignment was made, and only on one or other of these precedent conditions being performed, would the endorsers become liable on their assignment. Butfor the 8th section of the act of February 1819, the case would be clear. Now, does that a'et operate prospectively only on the case? If it does, how can it discharge the endorsee from performing the precedent condition which was entered into when the endorsement was made; for the endorsement was made by Taylor and Baltzell before the last act passed. If the act operates at all, it is, that the act makes the appellants liable, by dispensing with that part of the contract on the performance of which alone they agreed to become liable; the condition is changed, or rather it is entirely dispensed with and another substituted. Now it is that part of the opinion which says, that as “ the note upon its face, is made payable and negotiable at the Frankfort bank, and according to the act in force at the date of the note, might have been discounted by that bank, and no solid objection is perceived against the power of the legislature to authorise any bank to discount anote which at its date might have been discounted by any other bank,” that the author of these lines particularly requests the attention of the court; and first as to the power pf the legislature.
*344 If the power; of the legislature arises from the circumstance) that the note was payable and negotiable on its face at the Frankfort bank, and might have been • discounted there and become a bill of exchange, and, therefore, the legislature had the power to make it a bill of exchange, by an act authorising any other bank to discount it, it would necessarily follow, that the legislature had the power to make it a bill of exchange, by an act directly saying it should be a bill of exchange without its being discounted at all-, for i hold it clear that the-legislature may do that directly, which they may do indirectly, and authorising the note to be discounted by the Lexington bank, is indirectly making it a bill of exchange by their own sovereign power,, without the consent of the parties. If the note being made payable and negotiable on its face, at the Frankfort bank, gives the power, I ask how is such power inferred ? Is the power express or implied ? It is not express, because the face of the note is to the contrary-, it is at the Frankfort bank only, that it says it riiay be discounted. Neitherisit implied, because no inference can be drawn that the parties gave an implied consent for such a change. Nay, had the assignors.been asked the question, are you willing for the Lexington bank to discount this note, it might have been replied no, and if that consent had been insisted' on, the.contract might never have taken place. . Again, if the legislature could make it a bill of exchange by being discounted at the Lexington bank, they would have equal power to do so, by discounting it at the branch bank of the United States in Lexington, or the mother bank at Philadelphia, and then surely the rights, interests and remedies would have been different, and a different jurisdiction would have attached, and payable in a different medium; but it may be supposed, that as the note was sent to the Frankfort bank for payment, every right and advantage was secured to the appellants, and that they were precisely in the same situation as if the note had been discounted there.
It is, however, conceived otherwise. The act concerning these banks, provides that their notes, that is, the notes of each bank respectively, shall be received in payment of all debts due them; and.had this note become the property of the bank of Frankfort, the notes of that bank would have been received; nay, they were *345 eAtpelled^ to .receive them, even e.n executions; bpt Murióte bél'oh$mg'to'the Lexington banfej nothing but ‘meir pager’ wafficl:be received, and they having but little paper in circulation, perhaps none, much greater difficulty is imposed on the áppellants. Paper of the Frankfort, hank was plenty and in low credit, and-ffif the dise'ou^t had been at the place contracted, less difficulty would Have arisen inpayment, and this observation applies' to the last sentence of the opinion, and shews to my mind, and with great sensibility to the appdHant’$‘pocket, that' his right, wkjkh he thought was securéd toffiim by his contract, was’cpfeiged at least one half in amount of what he is compelled to pay, if the decisión- stands.
; Again, the opinion states, “ that according to the act in force at the date of the note, it might have been discounted at the Frankfort bank.” Now, this is the assumption of a fact which never existed, the performance of which alone would authorise this suit. It might have. A) pen discounted by the Frankfort bank; but it is enough for the'appellants to say, that it might not have 'beep;‘discounted there. When the endorsement was 1 made,At might have been well known that the Frankfort bank nevérwould discount the note, and the result bfthe fact,proves the truth of such knowledge. The truth i&ptfae Frankfort bank refused to discount this '• h‘ote; this fact does not appear, neither is it necessary for the appellants-that it should; that which doé$- not appear, is, presumed not- to exist. The opinion pr.e-s ‘'¡jfl&eig thp consent of the Frankfort bank to discounts,, 1-!Ii§fiWA;Tule-is otherwise, and their'consent is hót‘teche '"pléáilffie'dy and the note pot being discounted, it is to ■w$S0jB&'étét ‘the note might not-’have beén .-diacbtat- ‘ cd-^fpstead o'f presuming that-it might. -It is ,a \con-dítion -,which- the assignee was bound to perform,, and show' thkt- it was performed, before he could take the • benefit arising from the performance. It is not for the appellants-to prove that it -was not and could not be performed ; it is enough for them that no- such performance appears. -I, therefore, say that a supposition, that the note might have been discounted by the Frarikfort bank, does not warrant the conclusion, that the legislature was authorised to dispense with that part of the contract, however ample an equivalent they may substitute in lieu thereof; the contract is a sacred lay? between *346 the par tie's,1 an'd no change can be made, even to. tíre benefit of theparües, without their consent. Surety this act is only prospective, and cannot affect contracts before its date. ’ ’'
But it does seem to me, .that the.note being on it* fate negotiable and payable at the Frankfort bank, does not expressly or impliedly give or authorise a power in any one, even the legislaturé, to change the condition, or authorise the assignee, at his election, to change it. >
My situation is.p^culiar, in urging a re-consideration. My clients had for their counsel the late General Hardin, who most confidently assured them of success'. The loss of their case is now attributed to their loss of counsel, and a want of skill and attention is now charged on me. If a re-hearing is granted, they can then employ the best of counsel, and if they then lose their case, the blame will not lie on my shoulders, which, I think, is now unjustly imputed to me.
Upon the whole,-1 respectfully request a re-hearing, and now submit the case to your honors.
SAMUEL TODD.
But, on the 13lh of December, the petition was over* ruled. - ' ' ' ' '