Judge Haggin
delivered the opinion of the Court.
IN the year 1789, a man of the name of Holsey, contracted for the sale of 100 acres of land to Pugh, the same quantify to Bell, and 130 acres to Rankin, of the pre-emption of Townsend. Holsey claimed by contract with Hoy, who purchased from Miller, who was the assignee of Townsend; and being about to leave the country, (for he resided in South-Carolina,) Holsey and the three to whom, he had sold, went to Hoy, obtained a bond from Hoy to convey to Pugh, Rankin and Bell their respective parcels, which was taken in charge by Pugh. Rankin sold to one Shohem, and about the same period, (1789,) Pugh, Shohem and Bell settled on their land. In a year or two Bell died, leaving four children and a widow, who married Smith; and shortly afterwards, Shohem died also. In the year, 1800, Miller, who had obtained his grant for the land, called, on those who had purchased through Hoy, denied tbgt Hoy had completed the payment of the price, and the *126 tenants ail so arranged if, that Miller conveyed to them resPective tracts, they paying or securing to him their portion of the money which, as he represented, was due from Hoy. Pugh paid $50; the eldest son and only child of Shohem then of lull age, paid $65, and received a deed to himself; and Smith gave his bond with security for the payment of a horse worth $50, which he afterwards satisfied;- and Pugh being the security of Smith, by consent of the latter, the deed was made to Pugh, as an indemnity'. They also united in an indemnifying bond to Miller, against Hoy’s heirs, for Hoy was then dead. In October 1801, Smith sold to Pugh, and delivered him possession; and in 1803 and 1806, Pugh made contracts lor purchases from the heirs of Bell.
Defendant cetvecfthe tie and made the purchase ticethat the interested his vender (also n°llGthe amount paid as the bal-anee of the of'the'oon-0 tract, throtmh OTmplainants derived their equity, must ^"mentof1 that sum and interest Contracts for purchases ^,0?1 co“~ Within age, avail noth- ^
*126 In May 1807, the heirs of Bell filed their bill against Pugh, praying a conveyance of the land and payment of rents, &c.
At the August term 1820, an interlocutory decree was pronounced, agreeably to the prayer of the bill; commissioners were appointed to demark boundaries, assess rents, &e. and they met in September of that year. At the May term 1821, notice was taken of the death of Pugh, and an order of revivor against his heirs, who presented a petition to open the decree; but it was overruled. Mrs. Chiles, one of the heirs of Pugh, departed this life; and at the May term 1823, the following order was made: “The defendant, Nancy Chiles, having departed this life, by consent of parties ordered that this cause be revived in the names of, and against Walter, Elizabeth, Th.omas, John, Henry and William Pugh, her heirs and representatives.” At August term 1823, a final decree was pronounced for a conveyance, and payment of rent, reserving six months to the infant defendants, after the attainment Qf fu|j ag6i to s{low cai]se against it.
Pugh, in his answer, states, that when they went to. Hoy’s, to make the arrangement recited, Hoy consented to give his bond, and before he finished writing it, Holsey, who had sold to them, set off for Carolina; but that when it was completed, they refused to receive it, because it was defective as to title and mentioned no considerati°n, and Bell and Rankin started home; that he remained and remonstrated with Hoy, but in vain» He then took the bond as prepared, overtook Bell anci *127 Rankin; but they still disapproved. He denies that writings were given, evidencing the previous contracts, and he contends that the conveyance by Miller had no connexion with the contract between Miller and Hoy.
Jus(ice jtseIf reqU;res ¿afr there be a tli® Averse0 ° claims, and-the chancel-on the stale" demand with disapproba-
statutesof limitation do terms, f1^ 00„^ of chancery ^ave adopte^ t¡v'e s|nsg anditicon-^lved'on the shortest period.
. tied "thatS<3t" equitable rights must, ^hin’twelfty years,
whether°es sentiafto this bar.
We deem it unnecessary to repeat the circumstances which conduce to the result, but we cannot doubt Hoy executed the bond for a conveyance in satisfaction of his previous obligation to Holsey, and that he would not have permitted Pugh to lake it, but in trust Rankin and Bell, as related to their portions of the land; and were it admitted that no writings previously passed, still the transaction assumed a valid shape, in the execution of that instrument; and it seems to equally clear, that Miller made, the deeds of convey-anee in consummation of his contract with Hoy, and that between Hoy, Pugh and Bell. This conclusion is due to the moral character of the parties.
Nor would the contrary avail them. Pugh was fully apprised of the equity of Bell’s heirs; Hoy was botind to them; Miller to Hoy, and Pugh and Smith demnified Milleragainst Hoy. The most obvious and ample justice is effectuated by the payment of the fifty dollars to Smith, with its interest, and a conveyance the land by Pugh to Bell’s heirs. But Pugh purchased from Smith. The price we cannot learn; yet would presume, as he knew the interest of Smith in the property only amounted to fifty dollars, he only paid Mm about that sum, and will sustain, from that cause, no essential injury, if he'receives it.
Touching the purchase the complainants, must suffice to say, that agreeably to the proof in the cause, they were all infants at the time of those transac-lions.
The lapse of time is relied upon by the appellants, in bar of this suit. The tranquility and prosperity of so_ ciety, justice itself, require that there should be a limit to the assertion of adverse titles. All well regulated governments have made some provision on this ject, and our chancellor looks with disapprobation upon th e stale demand. But it is expedient that the limitation be prescribed and certain. Discretion is too apt to be exercised in caprice.
Our legislature has distinctly defined the period in which suits at law shall be commenced. These statutes do not in terms embrace suits in chancery; but, sens!- *128 ble oí the propriety of a rule, certain and uniform, the courts of chancery have long adopted, in relation to equitable rights, the legislative sense, as avowed in limiting actions upon legal rights. Difficulties, however, were for a while experienced in controversies relative to real estate, in consequence of a much longer period being allowed for the prosecution of some suits at law than others for that kind of property. They have, however, as we understand, resolved in England, and in this country too, upon the shortest — perhaps with propriety.
Heirs having remained with the wuision'untU»^ the equitable title under which the father held, time to bar their bill against subsequent purchaser with notice, did not commence he obtained the conveyance, whatever bo their ages.
Dower is not "n Hn^which the husband possessed dor bond for his equity ^ was clear, by all the pur-havingbeon^ paid, on ail the contracts whiclfhe derived before his death.
Whoever in good faith lantUofan- 8 other, ought to be compensated ■wnen evicted.
All limitation is predicated upon the supposed satisfaction of the demand, or the extinguishment of the right, and the loss of the testimony by which it may be proved; and the law has required greater solemnity and authenticity in such evidences as are chiefly used in real actions, and adopted better means for their preservation, than in those which are necessary to establish equities.
The ruie^ however, is at present well settled, that equitable rights must, in the general, be asserted within twenty years.
do not decide, whether, to give effect to this limitation, there must be an actual adverse possession not; nor is it necessary. Bell died in ful! possession, ¡n jbe year 1791 or 1792; his widow and children cont*nue^ uPon it, evidently in virtue of the title derived from him, until 1800, when Miller conveyed to pUgh. Suppose there had been no infancy, and that limitation commenced with that deed, still twenty years had not run when this suit was instituted. Time,, therefore, proves no bar; and we consider the com-plfi,nants entitled to the land.
The questions then occur, touching the rents dnd improvements.
It is contended, that the widow is entitled to dower in the land, and that this right passed to Pugh, by the sa[e 0f her husband, Smith. The claim of dower we deem °? highest consideration with the chancellor; and we are apprised of cases in which it has been held, that where the husband acquired a clear equity, by contract for purchase and payment of the price, the widow was entitled to dowry. But the right of Bell was not perfect in equity. Miller had not been paid *129 the whole of the price. We cannot, therefore, concur in the recognition of the widow’s right to dowry.
inlaw, the holds the legal title; bat equity and they of him made em'
Where the made*in baft faith, the oe-com-"hanoelio/a.'s ant, may not prevail.
But where adversary tfieoc-Je 0 must do the equity he dé-paying for the improve, he ob~ w!’®th" good or bad faith; for the oostnor his gain,
The successful claimant occupant the value of-his imprpve-p^^when 6 regained; for thus much he is enriched, and no more. Interest has no place in the estimate.
*129 [t seems from the commissioners’ report, that when Pugh obtained possession, there were about fif'een acres of this land in cultivation; whether opened together by Bell, or in part by Smith, we cannot tain ; and that Pugh, from time to time, extended the improvements, in all as cleared by him) to seventy acres. The commissioners report against him a rent for many years, referring back, as we suppose, the clearing. They gave him credit for the ments; but he is -in arrear upon the items of menl and rents, many hundred dollars.
Whoever in good faith improves the land of another, should be compensated for his money and his labor voted to that object, when he shall be evicted. 4 Bibb 196, Litt. S. C. 320, 3 Marsh. 177, 4 Litt. 346.
In this there can be no, hardship, because be is much enriched. It is true, that in law the improvements are all in him who holds the legal title; yet equity and in conscience the improvements are of him who made them.
But the present case is not precisely of this bind; for Pugh had notice of the prior equity of the plainant, and may not have improved in good faRh; and this distinction would be of important considera-lion, if he were complainant. It might then be said, with some propriety, that the chancellor should not extend his aid to the trespasser.
But the complainants ask the interposition of this court, and to obtain it they must do equity. The provements are imputable to no meñt in them. They cost the deiendant all the expence and labor, as it made with the utmost purity of motive, and his loss will be the same, if he shall not now be compensated for them. In conscience, he should be paid. Even in Green and Biddle, 8 Wheaton 1, the Supreme Court says, that at law, m an action of trespass for mesne profits, improvements may be allowed, not exceeding the piofits.
And it would seem almost to follow, that if the improvements may in equity be viewed as the property of the tenhnt, he should not be answerahle for rent upon them, until he has been paid their value. This is not exactly like the case of an employer and his labore:-, where an " *130 actíó'n may ai áby time be brought for compensation» There is no privity — no contract, express or implied,5 thó tenant can maintain no suit at law, and his right in chancery only becomes perfect, when the holder of the better title shall assert it; All the improvements which he may make-, are at his^ own peril. He builds fénces and houses; and they decay with time or are des’-troyed by lightning. The loss must be botne by the occupant; for when the commissioners come* they only value what they see, and in its present condition, however impaired. To compel the holder of the better title to pay the prime cost of improvements essentially decayed or entirely demolished, is to outrage the maxim upon which the whole process is founded: None shall be enriched by the loss of another. The successful claimant must pay to the tenant the value of his improvements on the land when regained; for thus much is he enriched, and no more. Nor can there be, with propriety, any computation of interest in favor of the tenant, previous to the recovery; for all the objections to the assessment of improvements destroyed or impaired, at cost, apply equally to the calculation of interest. It is inconvenient, and even absurd, for other' reasons, and we are able to find no precedent for it. In the increased' comforts and profits during his occupancy, the tenant finds his only indemnity for deterioration of improvements, and these we think he should enjoy.
Rents can be recovered against the • bona fide occupant, only from filing the bill — against the mala fide possessor for a period not exceeding five years, in analogy to the statute.
These rents are to be charged on the property as the occupant, or those under whom he claimed, entered upon it, excluding all reckoning for rents on improvements made by themselves.
The improvements made by both the occupant and those under whom he .claimed, at 'whatever period they were made, shall be valued as commissioners .find them, and paid for by the successful claimant.
In relation to the period when the computation of rent shall commence, some diversity is to be found in the books. We, however, understand the rule to he, in the general, that.the bonajide occupant shall account only from the time of filing the bill;- but the mala Jide possessor, from the time he entered, giving full effect to the statute oflimitations, which w'e have said applies by adoption to chancery proceedings. The infants had all attained full age more than five years before the commencement of this suit. But beyond that period the rents cannot extend; for that would be the limit at law, in a suit for mesne profits. 1 Maddox 74.
We are, therefore, of opinion that Pugh is chargeable for rents upon the property as received by Smith, to be computed back five years from the commencement of the suit, and entitled to compensation for all lasting- and valuable improvements made by Smith or himself" *131 upon th,e premises, in the condition in which the commissioners may find them. The other items seem to be correctly settled.
Decree will not be opened d'J'n't'to^nike' recently discovered te.sti-ao-es'of the cpmplain-thevic^u” nfthe defendant.'
Bibb, for plaintiffs; Sharp, for defendants.
Touching the petition to open the decree, to take recently discovered testimony, to prove the ages of cliil-dren raised chiefly in the neighborhood of the defendants, we can only say that it was correctly overruled,
We forbear to say any thing of the order of revival, and the appointment of guardians to defend for infants, if there were any. These will doubtless command the attention of counsel, when the cause shall return to the circuit court.
Decree reversed with costs, cause remanded, commissioners to be appointed to assess rents and improvements, and further proceedings in conformity with this opinion. ,